STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

ADAM A. REEVES (NYBN 2363877)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7157
    Fax: (415) 436-7234
    adam.reeves@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 21-CR-0171 JST |
| Plaintiff, | THE UNITED STATES' SUPPLEMENTAL SENTENCING MEMORANDUM |
| v. | Sentencing Date: August 26, 2022, at 9:30 a.m. |
| BRANDON WADE LITTLEFIELD, | |
| Defendant. | |

## I. INTRODUCTION

On April 8, 2022, the Court began the sentencing hearing in this case. Among other things, the Court heard statements from the many victims of the defendant's crimes. In the course of the hearing, certain questions arose about the defendant, like, for example, whether he misused victim funds to sustain his business, as he contended in his sentencing memorandum, and whether he had hidden assets that may be used to pay restitution. The government suggested an adjournment of the sentencing hearing in order to investigate these questions further. The United States hereby submits this supplemental sentencing memorandum in an effort to better answer the pending questions and otherwise

THE UNITED STATES' SUPPLEMENTAL SENTENCING MEMORANDUM
21-CR-0171 JST

assist the Court in its evaluation of the proposed Plea Agreement dated July 23, 2021 (Document 22).

## II.   PENDING QUESTIONS

Since April 8, 2022, the IRS has worked hard to analyze four plus years of bank records for the BLI companies. In addition, the parties have conferred frequently over the intervening four months about the details of the defendant's present financial condition and his direct and indirect access to assets today. This work has yielded some helpful answers to questions raised by the Court. But the defendant's business records are in disarray, especially for the period 2015-2018, the last three years the BLI companies were in operation. Tracing what happened to the victims' funds cannot be done with full precision given the state of the BLI companies' records.

### A.   Analysis of the BLI Bank Accounts

On April 8, 2022, the Court stated that "[a] representation was made by Mr. Littlefield through counsel that what happened to the money that was taken in this case is that Mr. Littlefield got in over his head and he expanded his business through Internet advertising." April 8, 2022, Hearing Transcript at 48. As a result, the defendant had "a large influx of new customers and he wasn't ready." *Id*. Summarizing the defense argument, the Court asked whether "[the defendant] got behind in his customers' obligations to the IRS … and he started robbing Peter to pay Paul and taking payments from new customers to pay off the penalties and so forth that were accumulating for old customers which shouldn't have accumulated in the first place but things kind of spiraled out of control." *Id*. at 48-49. The Court added: "My question for the government is does forensic accounting support that story? Because you've heard several of the victims state that they're concerned that Mr. Littlefield socked the money away somewhere, what he didn't spend on himself, and that seems to me … a legitimate question." *Id*.

The government's analysis of the BLI bank accounts supports the conclusion that most of the victims' funds were used to pay business-related costs of the BLI companies. Below is the summary analysis of the BLI companies' bank records prepared by the IRS:

//

//

THE UNITED STATES' SUPPLEMENTAL SENTENCING MEMORANDUM
21-CR-0171 JST

| **Bank Analysis for BLI Bank Accounts** | | |
|---|---|---|
| Time Period of January 1, 2015, through January 31, 2019 | | |

| DEPOSIT SOURCES: | Note | Amount |
|---|---|---|
| Payroll | | 68,821,177.03 |
| Transfers Between BLI Accounts | 1 | 5,447,857.34 |
| Cash / Money Orders | 2 | 5,266,448.43 |
| Returned Checks & Items | 3 | 1,295,107.71 |
| Loans | 4 | 1,890,583.00 |
| Insurance - Commissions | 5 | 196,847.82 |
| Unclassified Deposits | | 193,896.49 |
| **TOTAL DEPOSIT SOURCES*** | | **83,111,917.82** |

| TOTAL WITHDRAWAL SOURCES: | Note | Amount |
|---|---|---|
| **BLI Related Withdrawals:** | | |
| Payroll | | 62,875,947.00 |
| BLI Expenses - Payroll | 6 | 7,841,840.53 |
| BLI Expenses - Google / Microsoft | 7 | 1,157,198.65 |
| BLI Expenses - Other | 8 | 1,282,905.40 |
| BLI Expense - Bookkeeping.com Domain Name | | 156,285.00 |
| **BLI Related Withdrawals** | | **73,314,176.58** |
| | | |
| **Non-BLI Related Withdrawals:** | | |
| Littlefield - Personal Expenses | 9 | 591,457.66 |
| Credit Card Payments | 10 | 313,661.96 |
| Cash and Cash Equivalent Withdrawals | | 417,124.85 |
| Payment on Failed Loans | 11 | 242,500.00 |
| Payment on Failed Real Estate Purchase | 12 | 152,182.35 |
| **Non-BLI Related Withdrawals** | | **1,716,926.82** |
| | | |
| **Other Withdrawals:** | | |
| Transfers Between BLI Accounts | 1 | 4,020,925.27 |
| Loans | 4 | 3,126,900.40 |
| Unclassified | 13 | 1,487,085.94 |
| Bank Fees | | 92,877.21 |
| Unknown | 14 | 66,584.18 |
| **Other Withdrawals** | | **8,794,373.00** |
| **TOTAL WITHDRAWAL SOURCES[1]** | | **83,825,476.40** |

---

[1] The total deposits are $713,558.58 less than the total withdrawals because the BLI bank accounts had a beginning balance which is not reflected in the analysis. The beginning balance in all known BLI bank accounts totaled $858,122.76 and the ending balance in these accounts totaled $144,564.18, a difference of $713,558.58. This difference explains why withdrawals exceed deposits.

THE UNITED STATES' SUPPLEMENTAL SENTENCING MEMORANDUM
21-CR-0171 JST

This analysis of the approximately $83 million in funds being deposited into and withdrawn from the BLI companies' bank accounts reveals that only about $1.7 million was used for purposes that appear to be non-business related. Greater precision about whether new customer money is being used to pay old customer debt, and greater detail about the non-business-related expenses, is difficult to ascertain given the break-down in record keeping that appears to have happened at the BLI companies. All the same, analysis of the BLI companies' bank records supports a reasonable inference that some new funds were being used to pay old customer debts given how much of the money coming into the BLI companies was being used to sustain the business.

The IRS estimates that approximately $1.7 million out of a cash flow of approximately $83 million were for non-BLI related purposes. The government categorizes these expenses as non-business related because the defendant used these funds for meals and entertainment ($155,537), legal fees ($65,262), travel ($46,836), shopping ($38,103), vehicle expenses ($37,093), rent ($36,126), utilities ($35,744) and education ($20,938).[2]

In his sentencing memorandum, the defendant argued that: "At some point, he started misappropriating employment taxes from one company in order to cover overdue tax debts, including penalties and interest of other companies, whose payments were already late. As his debt grew, Mr. Littlefield compounded the loss in an attempt to stay afloat, continuing unsuccessfully to look for a way to stop the hemorrhaging." Document 35 at 4. The IRS analysis of the BLI companies' bank accounts tends to corroborate this claim except for the approximately $1.7 million the defendant appears to have taken for himself.[3]

B.    **The Defendant's Current Financial Circumstances**

At the sentencing hearing, several of the victims stated that they were concerned that the defendant had, as the Court put it, "socked the money away somewhere." *Id*. at 49. Since the initial sentencing hearing, the Financial Litigation Program (FLP) at the United States Attorney's Office has

---

[2] These are approximate totals.

[3] To prepare this summary analysis, the IRS was required to make a series of assumptions about the nature of the transactions being analyzed. If the Court prefers, the government is prepared to submit a copy of the full analysis to the Probation Office for consideration in its pre-sentence investigation.

THE UNITED STATES' SUPPLEMENTAL SENTENCING MEMORANDUM
21-CR-0171 JST

4

conferred at length with the defendant and counsel to prepare a financial statement reflecting his present access, either directly or indirectly, to assets including assets allegedly held by his former wife. The defendant contributed to this assessment of his financial condition by producing personal documents, bank records, and property settlement information. When asked, the defendant failed to produce relevant tax returns (because he said he had not filed them) and certain BLI companies' records like profit and loss statements and balance sheets (because he said he never prepared them). While the financial statement lacks complete information, the government is satisfied that the defendant provided all the relevant information that was currently in his possession and control, and it credits his explanation for why he could not produce relevant tax returns and the requested BLI records.

The resulting picture of the defendant's present financial circumstances – while not perfect – is corroborative of the assessment by the United States Probation Office that the defendant's liabilities exceed his assets and that he currently has a negative net worth. Pre-Sentence Report (PSR) at 15. It also does not reveal any indications that the defendant has access to concealed assets. Indeed, the IRS analysis of the BLI companies' bank accounts suggests that, at most, the defendant absconded with approximately $1.7 million, which was used to pay personal expenses, not transferred to offshore or hidden accounts. In this way, an examination of the defendant's current financial condition has revealed no obvious means by which he "socked the money away somewhere."

## CONCLUSION

The Court rightly raised serious questions about what happened to the victims' stolen funds and whether the defendant secreted away any of the millions of dollars they entrusted to him. These are valid and important sentencing considerations because, as the Court correctly observed, "Section 3553 requires me to think about the seriousness of the conduct." *Id*. at 52. Whether the defendant effectively stole or squandered all but $1.7 million of the $83 million he was given does not change the criminality of his misconduct, but it does go straight to the seriousness of his wrongdoing.

The government has endeavored to answer these questions without the benefit of complete information or the normal, pre-indictment, means to obtain it. All the same, the government's analysis of the BLI bank accounts supports the conclusion that most of the victims' funds were used to pay

THE UNITED STATES' SUPPLEMENTAL SENTENCING MEMORANDUM
21-CR-0171 JST

business-related costs of the BLI companies and that there are no clear indications that the defendant secreted assets in concealed accounts.

The competing imperatives of punishment, deterrence, and restitution, make the determination of a just sentence in this case particularly challenging.  A shorter sentence may elevate the possibility of restitution in the future; a longer sentence may reduce the possibility of any restitution.  Either outcome is unsatisfying to the victims.  For these reasons, the United States continues to recommend the proposed plea agreement to the Court which, if accepted, would sentence the defendant to a term of imprisonment of thirty-six (36) months; a term of supervised release of thirty-six (36) months; restitution in an amount to be determined by the Court but not less than $3,755,174; and a special assessment of $100.  This proposed outcome optimizes the difficult balance among the many competing sentencing considerations in this case.

Dated:  August 23, 2022                                                         Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

/s/ Adam A. Reeves

ADAM A. REEVES
Assistant United States Attorney

THE UNITED STATES' SUPPLEMENTAL SENTENCING MEMORANDUM
21-CR-0171 JST